UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
GLENROY JOHN, *pro se*,　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　Plaintiff,　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:　　**MEMORANDUM AND ORDER**
　　　　　-against-　　　　　　　　　　　　　:　　　　13-CV-3321 (DLI)
　　　　　　　　　　　　　　　　　　　　　　　:
CAROLYN W. COLVIN,　　　　　　　　　　　　　:
Commissioner of Social Security,　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　Defendant.　　　　　　　　　:
------------------------------------------------------------x
**DORA L. IRIZARRY, United States District Judge:**

On March 31, 2010, *pro se* Plaintiff Glenroy John ("Plaintiff") filed an application for Social Security disability insurance benefits ("DIB") and, on April 26, 2010, filed an application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). (*See* Certified Administrative Record ("R."), Dkt. Entry No. 19 at 10.) On June 8, 2010, the applications were denied and Plaintiff requested a hearing. (*Id.*) On August 31, 2011, Plaintiff appeared, *pro se*, and testified at a hearing before Administrative Law Judge Moises Penalver (the "ALJ"). (R. 40-53.) Due to a lack of medical evidence, the hearing was adjourned to more fully develop the record. (R. 50-53.) The hearing continued on November 3, 2011, at which Plaintiff appeared *pro se*. (R. 54-106.) By a decision dated April 4, 2012, the ALJ concluded Plaintiff was not disabled within the meaning of the Act. (R. 17.) On March 12, 2013, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (R. 1-3.)

The Commissioner moved for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, seeking affirmance of the denial of benefits. (*See* Mem. of Law in Supp. of Def.'s Mot. for J. on the Pleadings ("Def. Mem."), Dkt. Entry No. 18.) Plaintiff

filed no opposition. For the reasons set forth below, the Commissioner's motion for judgment on the pleadings is granted. The appeal is dismissed.

## BACKGROUND

### A. Non-Medical and Self-Reported Evidence

Plaintiff was born in 1973. (R. 70.) He graduated from high school and completed one year of college. (R. 74.) Plaintiff worked as a furniture mover for Victory Van Line from 1995 to 1996. (R. 193.) Between 1995 and 1996, he also worked as a security officer, patrolling the lobby of a public housing building. (R. 93, 193.) He spent three hours per shift standing or walking and four to five hours per shift sitting, but no lifting was required. (*Id.*) From 1998 to 2001, he worked as a package handler for FedEx. (R. 193.) In 2001, he was self-employed as a home cleaner. (R. 94-95.) From 2001 to 2003, he worked as a porter at a college. (R. 193.) From 2005 to 2006, he worked as a grounds keeper for the parks department, which was his last job. (*Id.*) His current source of income, which he has received since April 2010, is public assistance. (R. 75, 164.)

In a disability report from April 2010, he stated that he was unable to work because of partial paralysis on his left side, unspecified kidney, heart, and liver problems, and diabetes. (R. 191.) The pain on his left side spanned from his heart to his kidneys and to his left testicle. (R. 79.) He described the pain as poking, "like a knife go[ing] inside me." (R. 78, 207.) In a function report from May 2010, Plaintiff wrote that he had the ability to drive, but usually relied upon public transportation. (R. 73.) He stated that he could no longer work, go camping, or take his sons to parks or movies. (R. 199.)

Plaintiff testified that, on one occasion, when his left side pain was at its strongest, he collapsed outside his building. (R. 76.) After collapsing, he was taken to Staten Island

University Hospital ("SIUH").[1] (*Id.*) According to Plaintiff, a MRI of his left side was negative and blood and urine tests were negative. (R. 77, 79.) He testified that Dr. Alex Bruckstein performed an endoscopy and diagnosed him with unspecified viral infections. (R. 81-82.) Dr. Bruckstein prescribed Metrodoziatab, Prilosec, and Clarithyomycin, but Plaintiff claimed that medicine only hid the pain and he never healed fully. (R. 82.)

Plaintiff further testified that he is separated from his wife and their children live with her. (R. 71.) He lives alone in public housing. (R. 71-72.) He is able to dress, bathe, and cook for himself. (R. 72, 87.) He performs light household chores. (R. 88.) However, he needs help carrying groceries and tires after thirty minutes of housework. (*Id.*) He testified that his daily activities include watching the news, cleaning and vacuuming the house, caring for his three birds, preparing meals, checking the mail, walking, and reading. (R. 89.)

Notably, Plaintiff testified that he could work if he was able to alternate positions frequently, and was not required to lift more than 20 pounds, stand or walk for longer than four hours, and sit for more than six hours. (R. 90.)

**B.    Medical Evidence**

    **1.    Medical Evidence from February 26, 2006 (Alleged Onset Date) Through December 31, 2009 (Date Last Insured for DIB)**

There is no evidence from this period.

    **2.    Medical Evidence after April 26, 2010 (SSI Application Date)**

On June 3, 2010, Chitoor Govindaraj, M.D., of Brook Island Medical Group, consultatively examined plaintiff. (R. 217-219.) Plaintiff stated that he was laid off from his last job. (R. 217.) He complained of unspecified heart and kidney trouble as well as diabetes. (*Id.*) He stated that he had no prior surgeries or medical admissions and had not seen a doctor since

---

[1] Despite the ALJ's efforts to procure medical records from SIUH (R. 59), there are no medical records regarding this incident.

2004. (R. 217-18.) He was diagnosed with diabetes ten years ago and he preferred to diet and exercise rather than medicate. (R. 218.) He walked for exercise. (*Id.*) He also reported that he suffered an unspecified injury to his left testicle during high school. (*Id.*) He complained of a recent cough, which caused pain from his chest to his left testicle. (*Id.*)

Dr. Govindaraj observed that Plaintiff was alert and not in distress. (*Id.*) He was five feet and eleven inches tall and weighed 224 pounds. (*Id.*) His blood pressure was 130/80. (*Id.*) Examination of Plaintiff's head revealed no abnormalities. (*Id.*) Examination of his neck revealed no masses and movement was normal. (*Id.*) Plaintiff's chest was symmetrical with good air entry bilaterally with no rhonchi, rales or wheezing. (*Id.*) Plaintiff's abdomen was soft, non-distended, and non-tender. (*Id.*) Examination of his spine revealed no tenderness and he exhibited a normal range of motion. (R. 219.) Plaintiff was able to bend and touch the floor. (*Id.*) Examination of his heart revealed no abnormalities. (*Id.*) There was no sign of congestive heart failure such as hepatomegaly, peripheral or pulmonary edema. (*Id.*) Plaintiff's extremities showed no signs of cyanosis, clubbing or edema. (*Id.*) His peripheral pulses, vibratory sense, and knee jerk were 4/4. (*Id.*)

Examination of Plaintiff's central nervous system revealed no evidence of cerebral or cerebellar involvement. (*Id.*) His nerves were within normal limits and his motor and sensory systems and reflex findings were normal. (*Id.*) The range of motion of his back and joints were normal. (*Id.*) His hand dexterity was normal and there was no evidence of muscle spasm. (*Id.*) His straight leg raising was normal. (*Id.*) There was no evidence of subluxation, contractures, ankylosis, instability, redness, heat or swelling. (*Id.*) His gait was grossly normal. (*Id.*) His posture was normal and he could walk without a cane. (*Id.*)

Dr. Govindaraj diagnosed Plaintiff with a history of diabetes mellitus, heart trouble, and kidney problems. (*Id.*) He concluded that Plaintiff was medically stable and clear for occupation. (*Id.*) Plaintiff's prognosis was fair to good. (*Id.*)

On June 27, 2010, Rauvan Averick, M.D., of SIUH signed an "Excuse from Work or School" form excusing Plaintiff from work for one day. (R. 229.) A welfare program requirements form, dated August 2, 2010, indicated Plaintiff was exempt from participating in welfare program activities due to his medical condition. (R. 230.) The form included a determination by a licensed physician or other medical professional that stated Plaintiff was restricted to "limited bending, lifting, pulling, pushing, and low stress environment." (R. 231.) Notably, there are no contemporaneous medical records supporting the work assessments contained in these records.

On January 4, 2011, Dr. Syed Rizvi of SIUH completed a wellness plan for Plaintiff. (R. 227-28.) Dr. Rizvi diagnosed Plaintiff with rule-out diverticulosis, epididymitis, and rule-out renal stones. (R. 227.) He noted that Plaintiff was overweight and had elevated blood pressure, chronic left-sided pain, and normal abdominal and neurological examinations. (*Id.*) Dr. Rizvi was uncertain as to whether Plaintiff took prescribed medication or complied with treatment modalities. (*Id.*) The notes from this visit indicate that, previously, Dr. Rizvi prescribed Metformin 500 mg, which Plaintiff ceased taking. (*Id.*) Similarly, Dr. Rizvi prescribed Plaintiff an ACE inhibitor, which Plaintiff failed to procure. (*Id.*) The notes also indicate that several months prior to this visit, Plaintiff underwent a right upper quadrant sonogram for elevated gamma-glutamyl transferase and a testicular sonogram, both of which were normal. (*Id.*) Dr. Rizvi recommended that Plaintiff follow up with an endocrinologist, a gastroenterologist, and a

urologist. (R. 228.) Dr. Rizvi opined that Plaintiff would be able to work with restriction, but provided no further detail as to his specific work restrictions. (*Id*.)

A Temporary Assistance Work Requirements Determination form dated September 20, 2011, indicated that Plaintiff could participate in welfare work activities as long as those activities involved "limited bending and pushing." (R. 223-24.)

C. **Vocational Expert ("VE") Testimony**

VE David Vandergoot testified at Plaintiff's November 3, 2011 hearing. (R. 97-105.) The VE testified that Plaintiff's past work as a security patrolman is classified as semi-skilled, light exertion work, and that his past work as a cleaner is classified as unskilled, heavy exertion work, but based on Plaintiff's testimony, was performed as light exertion work. (R. 98.) The VE testified that a hypothetical individual with the ability to perform modified light duty work would not be able to perform either of Plaintiff's past relevant positions. (R. 101.) However, the VE testified that there are ample other positions available in the national and local economies, such as cashier, surveillance monitor, routing clerk, and clerical sorter. (R. 101-03.)

## DISCUSSION

A. **Standard of Review**

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g). A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1998). The former determination requires the court to ask

whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F. 2d 751, 755 (2d Cir. 1982) (internal citations omitted). The latter determination requires the court to ask whether the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand by the court for further proceedings is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004) (citing *Williams v. Apfel*, 204 F. 3d 48, 50 (2d Cir. 1999); *Rosa v. Callahan*, 168 F. 3d 72, 82-82 (2d Cir. 1999); *Parker v. Harris*, 626 F. 2d 225, 235 (2d Cir. 1980)). A remand to the Commissioner is also appropriate "[w]here there are gaps in the administrative record." *Rosa v. Callahan*, 168 F. 3d 72, 83 (2d Cir. 1999) (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)). ALJs, unlike judges, have a duty to "affirmatively develop the record in light of the essentially non-adversarial nature of the benefits proceedings." *Tejada v. Apfel*, 167 F. 3d 770, 774 (2d Cir. 1999) (quoting *Pratts v. Chater*, 94 F. 3d 34, 37 (2d Cir. 1996)) (quotations omitted).

*Pro se* pleadings are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (citation omitted). Courts should "interpret [such papers] to raise the strongest arguments that they suggest." *Forsyth v. Fed'n Emp't & Guidance Serv.*, 409 F. 3d 565, 569 (2d Cir. 2005) (citation and internal quotation marks

omitted). Though a court need not act as an advocate for *pro se* litigants, in such cases there is a "greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done." *Davis v. Kelly*, 160 F. 3d 917, 922 (2d Cir. 1998) (citation omitted).

**B.     Disability Claims**

To receive disability benefits, claimants must be disabled within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (d). Claimants establish disability status by demonstrating an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the initial burden of proof on disability status and is required to demonstrate disability status by presenting medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, as well as any other evidence the Commissioner may require. 42 U.S.C. § 423(d)(5)(A); *see also Carroll v. Sec'y of Health & Human Servs.*, 705 F. 2d 638, 642 (2d Cir. 1983).

ALJs must adhere to a five-step inquiry to determine whether a claimant is disabled under the Social Security Act as set forth in 20 C.F.R. §§ 404.1520 and 416.920. If at any step the ALJ finds that the claimant is either disabled or not disabled, the inquiry ends there. First, the claimant is not disabled if he or she is working and performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the ALJ considers whether the claimant has a "severe impairment," without reference to age, education and work experience. Impairments are "severe" when they significantly limit a claimant's physical or mental ability to conduct basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, the ALJ will find the claimant disabled if his or her impairment meets or equals an impairment listed in 20 C.F.R. § 404,

Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant does not have a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity ("RFC") in steps four and five. 20 C.F.R. §§ 404.1520(e), 416.920(e). In the fourth step, the claimant is not disabled if he or she is able to perform past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, in the fifth step, the ALJ determines whether the claimant could adjust to other work existing in the national economy, considering factors such as age, education, and work experience. If so, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). At this fifth step, the burden shifts to the Commissioner to demonstrate that the claimant could perform other work. *See Draegert v. Barnhart*, 311 F. 3d 468, 472 (2d Cir. 2002) (citing *Carroll,* 705 F. 2d at 642).

**C.     The ALJ's Decision**

On April 4, 2012, the ALJ issued a decision denying Plaintiff's claims. (R. 10-17.) The ALJ followed the five-step procedure in making his determination that Plaintiff could not perform past relevant work as a security guard or cleaner, but was capable of making a successful adjustment to other work in the national economy, and therefore, was not disabled. (R. 12-17.) At the first step, the ALJ determined that Plaintiff had not worked since February 28, 2006, the alleged onset date. (R. 12.) At the second step, the ALJ found the following severe impairments: hypertension; rule out diverticulitis; rule out kidney stones; and obesity. (*Id.*) At the third step, the ALJ concluded that Plaintiff's impairments, in combination or individually, did not meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 13.)

At the fourth step, the ALJ found that Plaintiff retained the RFC to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b). (R. 13.) However, the ALJ noted that

Plaintiff was unable to perform the full range of light duty work as he: could not stand or walk more than four hours during an eight-hour shift; needed the ability to alternate between sitting and standing; could occasionally push or pull with his left upper extremity; could not climb ladders, ropes, or scaffolds; and could occasionally climb ramps or stairs. (*Id.*) The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effect of his symptoms were not credible to the extent that they were inconsistent with the ALJ's RFC assessment. (R. 15.) The ALJ concluded that Plaintiff was not capable of performing his past relevant work as a security guard or a cleaner. (*Id.*) At the fifth step, the ALJ noted that, although Plaintiff, a thirty-two-year-old, was a "younger individual," his light duty work restrictions impeded an automatic finding of "not disabled" under Medical-Vocational Rule 202.21. In relying on the VE's testimony, the ALJ found that there are "jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform" at a modified light duty exertion level, such as cashier, surveillance systems monitor, routing clerk, and clerical sorter. (R. 16-17.) Thus, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. (R. 17.)

### D.   Duty to Develop the Record

In light of the non-adversarial nature of social security proceedings, the ALJ has an affirmative duty to develop a full and fair record. *See Tejada v. Apfel*, 197 F. 3d 770, 774 (2d Cir. 1999); 20 C.F.R. § 404.1512(d)-(f) (setting forth the affirmative obligations of ALJs). Plaintiff's claim can be remanded to the Commissioner "[w]here there are gaps in the administrative record." *Rosa v. Callahan*, 168 F. 3d 72, 83 (2d Cir. 1999) (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)). ALJs have a duty to "affirmatively develop the record in light of the essentially non-adversarial nature for the proceedings." *Tejada v. Apfel*, 167 F. 3d 770, 774 (2d Cir. 1999).

In this case, the ALJ fulfilled his duty to develop the record. In advance of Plaintiff's first hearing, the ALJ contacted the treating physicians listed on Plaintiff's application to request records of Plaintiff's treatment. (R. 59.) However, both treating physicians indicated that they had no records of treating Plaintiff. (*Id.*) This result is not surprising as Plaintiff indicated to the consultative examining physician that he had not visited a physician since 2004. (R. 217.) Nonetheless, the ALJ adjourned the hearing to develop the record more fully. (R. 50-53.)

At the second hearing, the ALJ explained to Plaintiff that his file still contained very limited medical evidence, and that such evidence was necessary to verify Plaintiff's claims. (R. 44-45, 50-53, 59.) The ALJ permitted Plaintiff to submit copies of records at the hearing (R. 63-64, 105-06) and told Plaintiff that he would keep the record open for thirty days to allow Plaintiff to submit additional records (R. 68-69). Plaintiff submitted additional medical records, which the ALJ considered in reaching his decision. Under these circumstances, the ALJ fulfilled his duty to develop the record. *See Rutkowski v. Astrue*, 368 F. App'x 226, 229 (2d Cir. 2010) (concluding that the ALJ fulfilled his duty to develop the record by requesting medical records, conducting two hearings, and permitting the claimant to cross-examine the VE).

**E.     Application**

The Commissioner moves for judgment on the pleadings, seeking affirmance of the denial of Plaintiff's benefits on the grounds that the ALJ applied the correct legal standards to determine Plaintiff was not disabled and the factual findings are supported by substantial evidence. (Def. Mem.) Plaintiff filed no opposition to the Commissioner's motion. Upon review of the record, the Court is satisfied that the ALJ applied the appropriate legal standards and the conclusion is supported by the substantial evidence.

### 1. Substantial Gainful Activity

There is no dispute as to the ALJ's analysis at step one. The evidence establishes that Plaintiff was not engaged in substantial gainful activity since February 28, 2006 (the alleged onset date).

### 2. Severe Impairments

There is no viable challenge to the ALJ's analysis at step two. The ALJ found that Plaintiff had the following severe impairments: hypertension; rule out diverticulitis; rule out kidney stones; and obesity. (R. 12.) There is no medical evidence of any additional impairments, severe or otherwise.

### 3. Medical Listings

There is no viable challenge to the ALJ's analysis at step three. The ALJ considered listing 4.12 (peripheral arterial disease) when evaluating Plaintiff's hypertension. (R. 13.) Listing 4.12 sets forth that:

> [p]eripheral arterial disease, as determined by appropriate medically acceptable imaging, causing intermittent claudation and one of the following: A. [r]esting ankle/brachial systolic blood pressure ratio of less than 0.50; B. [d]ecrease in systolic blood pressure at the ankle on exercise of 50 percent or more of pre-exercise level and requiring 10 minutes or more to return to pre-exercise; C. [r]esting toe systolic pressure of less than 30mm Hg; or D. [r]esting toe/brachial systolic blood pressure ratio of less than 0.40.

20 C.F.R. § 404, Subpart P, App. 1, 4.12. There are no medical records establishing any of the criteria for listing 4.12. (R.13.) To the contrary, medical examinations of Plaintiff's cardiovascular system were unremarkable, other than noting untreated hypertension. (R. 219, 227.) Accordingly, the ALJ correctly concluded Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.*)

### 4. Ability to Perform Light Work

The Court construes the *pro se* submissions as a challenge the ALJ's determination that Plaintiff can perform modified light duty work. "Light work requires the ability to lift up to 20 pounds occasionally, lift 10 pounds frequently, stand and walk for up to 6 hours a day, and sit for up to two hours." *Mancuso v. Astrue*, 361 F. App'x 176, 178 (2d Cir. 2010); *see also* 20 C.F.R. § 404.1567(b). The ALJ found that Plaintiff was capable of performing "light work," except that Plaintiff could stand and/or walk for no more than four hours total out of an eight-hour day. (R. 13.) Further, the ALJ found that Plaintiff "must be able to alternate between sitting and standing, provided that he will not be off task more than five percent of the work period; he can only occasionally push or pull with his left upper extremity; he can never climb ladders, ropes, or scaffold; and he can only occasionally climb ramps or stairs." (*Id.*)

First, the ALJ's function-by-function assessment was adequate as the ALJ made sufficient findings as to Plaintiff's capabilities. *See Oliphant v. Astrue*, 2012 WL 3541820, at *23 (E.D.N.Y. Aug. 14, 2012) (concluding that the Commissioner sustained his burden at step five, as the ALJ, in determining that plaintiff could perform [light] work, made findings as to plaintiff's ability to sit, stand, walk, lift, carry, push, and pull, in addition to findings regarding plaintiff's mental and physical ability to perform [light] work); *see also Campbell v. Astrue*, 465 F. App'x. 4, 6 (2d Cir. 2012) (finding that, even though the ALJ did not discuss Plaintiff's ability to perform each function identified in 20 C.F.R. § 404.1567(b) as "light work," substantial evidence supported the ALJ's overall RFC determination, such as detailed medical evidence from treating sources and opinions from state-medical examiners).

Second, there is no evidence to the contrary. Plaintiff testified that he would be able to work if he could alternate positions, was not required lift to more than 20 pounds, could stand

13

and walk for longer than four hours, sit for more than six hours, and was able to shift positions for a few minutes every hour. (R. 90.) Furthermore, all of the medical evidence in the record supports the ALJ's findings as each doctor indicated that Plaintiff could work with limited restrictions. (R. 218, 228, 231.)

Finally, the ALJ correctly discounted Plaintiff's statements as to his pain and his symptoms. The Second Circuit recognizes that subjective allegations of pain may serve as a basis for establishing disability. *See Taylor v. Barnhart*, 83 F. App'x 347, 350 (2d Cir. 2003) (summary order) (citing *Marcus v. Califano*, 615 F. 2d 23, 27 (2d Cir. 1979)). However, the ALJ is afforded discretion to assess the credibility of a claimant and is not required to credit Plaintiff's testimony about the severity of [his] pain and the functional limitations it caused. *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 434 (S.D.N.Y. 2010) (quoting *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008) (summary order) (quotation marks and alterations omitted)).

In determining Plaintiff's credibility, the ALJ must adhere to a two-step inquiry set forth by the regulations. *See Peck v. Astrue*, 2010 WL 3125950, at *4 (E.D.N.Y. 2010). First, the ALJ must consider whether there is a medically determinable impairment that could reasonably be expected to produce the pain or symptoms alleged. 20 C.F.R. § 404.1529(b); S.S.R. 96-7p. Second, if the ALJ finds that the individual suffers from a medically determinable impairment that could reasonably be expected to produce the pain or symptoms alleged, then the ALJ is to evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which they limit the individual's ability to work. 20 C.F.R. § 404.1529(c). When the ALJ finds that the claimant's testimony is not consistent with the objective medical evidence, the ALJ is to evaluate the claimant's testimony in light of seven factors: 1) the claimant's daily

activities; 2) the location, duration, frequency, and intensity of the pain; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; 5) any treatment, other than medication, that the claimant has received; 6) any other measures that the claimant employs to relieve the pain; and 7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

"If the ALJ rejects plaintiff's testimony after considering the objective medical evidence and any other factors deemed relevant, he must explain that decision with sufficient specificity to permit a reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief." *Cairo v. Comm'r of Soc. Sec.*, 2013 WL 1232300, at *9 (E.D.N.Y. Mar. 26, 2013) (citing *Correale-Englehart*, 687 F. Supp. 2d at 435). When the ALJ neglects to discuss at length his credibility determination with sufficient detail to permit the reviewing court to determine whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence, remand is appropriate. *Id.* (citing *Correale-Englehart*, 687 F. Supp. 2d at 435-36; *Grosse v. Comm'r of Soc. Sec.*, 2011 WL 128565, at *5 (E.D.N.Y. Jan. 14, 2011) (finding the ALJ committed legal error by failing to apply factors two through seven); *Valet v. Astrue*, 2012 WL 194970, at *22 (E.D.N.Y. Jan. 23, 2012) (remanding because the ALJ failed to address all seven factors)).

Turning to the instant action, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with the above residual functional capacity assessment." (R. 15.) The ALJ explained in depth that the objective

evidence did not support Plaintiff's subjective complaints, allegations, and physical limitations. (R. 13-15.) First, Plaintiff's statements as to his daily activities indicate that he is able to engage in a level of physical exertion that is greater than what he indicated in his applications. (R. 72-73, 87-89.) Indeed, Plaintiff testified that he could perform modified light duty work that involved precisely the work restrictions the ALJ established. (R. 90.) He further indicated that he preferred to exercise and diet rather than seek medical treatment for his diabetes. (R. 218.) Finally, the medical evidence supports the ALJ's credibility determination, as every diagnostic test was negative. (R. 217-19, 223-32.)

   5.   **Other Work**

The Court construes the *pro se* submissions as challenging the ALJ's determination that Plaintiff could perform other work. In his decision, the ALJ concluded that Plaintiff could not engage in his past relevant work as a security guard or cleaner. (R. 15.) He reached this decision by relying on the testimony of the VE. The VE testified that Plaintiff's past work as a security guard was semi-skilled, light duty work, and that his past work as a cleaner was unskilled, heavy duty work. (R. 98.) Thus, the ALJ considered whether Plaintiff could perform other work.

With respect to Plaintiff's ability to perform other work, the VE testified that with Plaintiff's age, education, work experience, and RFC, Plaintiff would be able to perform the duties of a cashier, surveillance systems monitor, routing clerk or clerical sorter and that these jobs were readily available in the national and local economies. (R. 101-04.) The ALJ concluded Plaintiff could engage in other work readily available in the national economy because light duty jobs exist that can accommodate Plaintiff's RFC. (R. 15-16.) In reaching this result, the ALJ's decision was supported by the substantial evidence in the record. (R. 101-04.) Accordingly, the ALJ's disability determination is affirmed.

16

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is granted and this appeal is dismissed.

SO ORDERED.

Dated: Brooklyn, New York
      September 12, 2014

                                              /s/
                                      DORA L. IRIZARRY
                                  United States District Judge